UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES R. ZUEGEL, <br><br> Plaintiff, <br><br> v. <br><br> MARCO GARCIA, et al., <br><br> Defendants. | Case No. 21-cv-07538-BLF <br><br> **ORDER GRANTING MOUNTAIN VIEW DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND** <br><br> [Re: ECF No. 16] |

Déjà vu. In this case, Plaintiff James Zuegel alleges multiple violations of 42 U.S.C. § 1983 by Defendants City of Mountain View and Mountain View police officers Marco Garcia, Patrick Ward, and Britton Moore arising out of Zuegel's warrantless arrest on June 7, 2015. Zuegel himself characterizes this case as a "follow-on" to a previous case before this Court in which the Court dismissed similar § 1983 claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and in which Zuegel eventually prevailed on other claims before a jury. *See Zuegel v. Mountain View Police Dep't*, No. 17-cv-3249 (N.D. Cal., filed Jun. 6, 2017) ("*Zuegel I*").

Understandably, Defendants now move to dismiss the claims in this case, arguing that they are res judicata due to the judgment in *Zuegel I*. *See* ECF No. 16 ("MTD"); *see also* ECF No. 29 ("Reply"). Zuegel argues that the claims are not res judicata and that the *Heck* bar has been lifted because habeas relief is no longer available to him after his probation ended. *See* ECF No. 28 ("Opp."). The Court previously found this motion suitable for disposition without oral argument.[1] *See* ECF No. 24; Civ. L.R. 7-1(b). For the following reasons, the Court finds that the *Heck* bar

---

[1] Zuegel's request to restore this motion to the argument calendar is DENIED. ECF No. 30. The Court remains of the view that the issues are suitable for disposition without oral argument.

1  remains because Zuegel's claims were not pursued diligently through other avenues of review.
2  The motion to dismiss is thus GRANTED WITHOUT LEAVE TO AMEND, and the Clerk shall
3  close the case.

### I. BACKGROUND

#### A. *Zuegel I*

On June 6, 2017, Zuegel filed his original lawsuit in this Court. *See Zuegel I*, ECF No. 1. The Court first evaluated Zuegel's claims in that lawsuit in April 2018 after he obtained counsel and filed an amended complaint. *See Zuegel I*, Order Granting Motion to Dismiss First Amended Complaint, ECF No. 40 ("Apr. '18 Ord."). As the Court summarized in that Order, in the amended complaint, Zuegel asserted claims arising out of incidents occurring between May and June 2015. Zuegel alleged that on May 23, 2015, he and his wife accompanied their severely autistic son JR (and his autism service dog) to the Mountain View El Camino YMCA for a swim lesson. *Id.* at 2 (citing the amended complaint). After the lesson, as Zuegel waited for his family on one of the couches at the YMCA, two young girls sat near him on the couch and talked to Zuegel about his son's service dog. *Id.* JR emerged making loud noises, sat between Zuegel and one of the girls, and tried to "dart" away. *Id.* Zuegel grabbed JR by the back of his shirt to try to prevent him from darting away, as he normally did, and said something to the effect of "sit your butt down." *Id.* Zuegel and his family left after briefly encountering a woman who appeared to be the mother of one of the girls. *Id.*

Zuegel alleged that days later and unknown to Zuegel, the girl's mother reported to the Mountain View Police Department that a man with a service dog at the YMCA had slapped her daughter on the butt and asked her, "How old are these buns?" Apr. '18 Ord. at 2–3. The young girl corroborated these allegations in a follow-up interview, although also saying that the man did not "touch any private areas." *Id.* at 3. Based on these interviews, Officers Ward and Moore arrived at and entered Zuegel's home at 9:33 p.m. on June 7, 2015 without an arrest or search warrant and arrested Zuegel in the presence of his wife and JR after he refused to be interrogated without counsel or his wife present. *Id.* The arrest was extremely distressing to the family and caused JR to become highly agitated. *Id.* Officer Garcia led the interrogation of Zuegel at the

United States District Court
Northern District of California

1     police station. *Id.* Zuegel was confined overnight and for part of the following day until his wife
2     posted bail. *Id.*

3           The Santa Clara District Attorney charged Zuegel with misdemeanor sexual battery and
4     misdemeanor soliciting or engaging in lewd conduct in public in violation of California Penal
5     Code §§ 242-243.4(3)(1), 647(a). Apr. '18 Ord. at 3–4. Zuegel alleged that to avoid having to
6     register as a sex offender, on September 30, 2016, he pled no contest to misdemeanor disorderly
7     conduct. *Id.* Zuegel was placed on probation for three years, ordered to perform 75 hours of
8     community service, and barred from coming within 300 yards of the YMCA. *Id.*

9           In the amended complaint in *Zuegel I*, Zuegel asserted four state law claims against the
10    Defendants here, one § 1983 claim against Officers Garcia, Ward, and Moore, and one § 1983
11    claim against the Mountain View Police Department and City of Mountain View. Apr. '18 Ord. at
12    4. As is relevant here, in April 2018, this Court dismissed the § 1983 claims asserted in the First
13    Amended Complaint, largely without leave to amend. *Id.* at 5–15. The Court found that the
14    § 1983 claims for false arrest, lack of a warrant, coercion to consent to a search of his phone,
15    violation of his right to remain silent, violation of his right to counsel, and violation of his due
16    process right not to be interrogated were barred by *Heck* because establishing the basis for
17    damages under § 1983 for those courses of conduct would necessarily demonstrate the invalidity
18    of the underlying conviction. *Id.* at 6, 12 (citing *Heck*, 512 U.S. at 481–82). The Court held that
19    those claims were "properly the subject of habeas corpus proceedings which [Zuegel] allege[d] he
20    [wa]s simultaneously pursuing." *Id.* at 11, 12. The Court granted Zuegel leave to amend solely to
21    attempt to allege a § 1983 claim based on "the circumstances surrounding the manner of the
22    arrest"—the nighttime arrest or arrest without consent to enter absent exigent circumstances—
23    because those courses of conduct would not demonstrate the invalidity of the plea. *Id.* at 15.
24    Otherwise, his § 1983 claims were dismissed without leave to amend. *Id.* at 6, 11, 12, 15.

25          Zuegel proceeded to trial on two claims—one for warrantless entry and arrest against
26    Officers Moore and Ward and one for *Monell* liability against the City on a failure to train theory
27    related to the first claim. *See Zuegel I*, ECF No. 108 (denying summary judgment on those
28    claims). On November 20, 2020, the jury returned a verdict finding that the officers did not enter

Zuegel's residence in violation of the Fourth Amendment, but that they had remained inside after consent was withdrawn, thus violating the Fourth Amendment. *See Zuegel I*, ECF No. 178 at 1–2 (jury verdict). The jury found that the Fourth Amendment violation was not a result of the City's deliberate indifference for failure to train. *Id.* at 2. The jury awarded Zuegel $3,000 in total damages, with fault apportioned equally between Officers Ward and Moore. *Id.* at 2–3. The Court entered judgment on November 23, 2020. *See Zuegel I*, ECF No. 179. The Court later denied the defendants' motion for judgment as a matter of law and granted in part Zuegel's request for attorneys' fees. *See Zuegel I*, ECF No. 223. Zuegel's appeal of the Court's orders on the motions to dismiss and motion for summary judgment is still pending at the Ninth Circuit.[2] *See* 9th Cir. No. 21-16277.

### B. Zuegel's State Habeas Proceedings

Zuegel's plea to and conviction of the state misdemeanor charge occurred on September 30, 2016. *See Zuegel I*, ECF No. 19-4; *accord* Compl. ¶ 54 (stating the Zuegel's three years of probation were completed on September 30, 2019). Zuegel filed his petition for a writ of habeas corpus in the Santa Clara County Superior Court on December 19, 2017, fifteen months after his conviction. *See* Request for Judicial Notice ("RJN") Ex. H, ECF No. 16-10, at 67–113. The Superior Court denied the writ on February 2, 2018. *See id.* at 115–19. He filed a writ of habeas corpus in the Sixth District Court of Appeal on April 2, 2018, *id.* at 121–252, which was denied on November 1, 2018, *id.* at 254. He filed his habeas petition in the Supreme Court of California on December 31, 2018. *See generally id.* The Supreme Court denied the petition on July 10, 2019—approximately two-and-a-half months before Zuegel's probation was set to end—thus exhausting Zuegel's state habeas remedies. *See* RJN Ex. I. Zuegel did not file a federal habeas petition because he "could not realistically complete" those proceedings in the limited time before his probation would end and the habeas petition would become moot. *See* Opp. at 9.

### C. *Zuegel II*

Zuegel filed this case on September 28, 2021, two days short of two years from the

---

[2] Defendants also filed an appeal that they later voluntarily dismissed. *See* 9th Cir. No. 21-16276.

4

termination of his probation. *See* ECF No. 1 ("Compl."). Zuegel characterizes the case as a "follow-on" to *Zuegel I* that is based on the same conduct but which asserts claims that have supposedly newly "accrued" under § 1983 due to the unavailability of federal habeas relief after the termination of Zuegel's probation. *Id.* ¶¶ 1–2. The Complaint asserts four § 1983 claims: (1) against Officers Ward and Moore for arrest without probable cause, *id.* ¶¶ 55–57; (2) against Officers Ward and Moore for arrest in retaliation for assertion of constitutional rights, *id.* ¶¶ 58–60; (3) against Officer Ward and Detective Garcia for transportation to county jail for booking without probable cause, *id.* ¶¶ 61–64; and (4) against the City of Mountain View under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Compl. ¶¶ 65–71.[3] Zuegel seeks compensatory and punitive damages and attorneys' fees. *Id.* at 26.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

---

[3] The Complaint also separately asserted § 1983 claims against Gavin Newsom, Governor of California, and Rob Bonta, Attorney General of California. *See* Compl. ¶¶ 72–91. After those defendants moved to dismiss, Zuegel voluntarily dismissed his claims against them and the Court dismissed them from the case. ECF No. 27.

550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### III.  DISCUSSION

#### A.  Requests for Judicial Notice

Both Zuegel and Defendants request judicial notice of materials from *Zuegel I* and Zuegel's habeas proceedings.  Zuegel requests judicial notice of the "docket sheet and filings" in *Zuegel I*.  Opp. at 2 n.1.  Because Zuegel does not identify specific entries or filings on the docket, the request is DENIED.  *See Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, 595 F. App'x 670, 672 (9th Cir. 2014) (noting that a blanket request for judicial notice "of entire case dockets" made it "impossible for the court to glean from [the] request the facts [the party] wanted [the court] to notice").  In contrast, Defendants request judicial notice of specific documents:  the amended complaint, second amended complaint, two motion to dismiss orders, the summary judgment order, the judgment, and the notice of appeal/cross-appeal in *Zuegel I*.  *See* RJN, ECF No. 16-2, at 2.  Defendants also request judicial notice of Zuegel's habeas petition in the California Supreme Court (and the lower court documents attached to it) and the California Supreme Court's order denying the habeas petition.  *See* RJN Exs. H, I.  Zuegel does not object to the request and in fact cites several of these documents in his opposition.  *See, e.g.*, Opp. at 2.  The Court GRANTS Defendants' request for judicial notice of these court documents for their existence, not the truth of any disputed facts therein.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2004).

#### B.  Res Judicata Does Not Bar These Claims

Defendants' first argument is that the claims in this lawsuit are res judicata.  MTD at 4–6.  Zuegel argues that they are not because the issue of whether the officers had probable cause to arrest Zuegel was not adjudicated in the prior lawsuit because it was dismissed as *Heck*-barred.  Opp. at 4.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata "bars 'all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action, if the prior suit concluded in a final judgment on the merits.'" *Int'l Union of Operating Engineers-Emps. Const. Indus. Pension & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (quoting *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 457 (9th Cir. 1980)). Application of res judicata requires "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Although res judicata is a defense, it can be raised on a Rule 12(b)(6) motion where "the defense raises no disputed issues of fact." *Scott v. Kuhlman*, 746 F.2d 1377, 1378 (9th Cir. 1984).

There is no dispute between the parties that the first and third elements of res judicata are met. First, there is an identity of claims between the two lawsuits because the "two suits arise from the same transactional nucleus of operative facts." *Tahoe-Sierra*, 322 F.3d at 1078. Both suits concern Zuegel's June 7, 2015 arrest by Defendants. Zuegel's assertion of some new causes of action in this lawsuit does not alter this conclusion because "[n]ewly articulated claims based on the same nucleus of facts" are still res judicata "if the claims could have been brought in the earlier action." *Id.* at 1078. Zuegel does not argue that he could not have pleaded these claims in the earlier action. Second, Zuegel and all of the Defendants here were parties to *Zuegel I*.

The dispute is over the second element: whether there was "a final judgment on the merits" in *Zuegel I*. Defendants have not cited a case holding that Rule 12(b)(6) dismissals pursuant to *Heck* are unequivocally "judgment[s] on the merits" such that res judicata applies. Defendants are correct that a dismissal *with prejudice* under Rule 12(b)(6) is a "judgment on the merits" for purposes of res judicata. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002); *Beard v. Sheet Metal Workers Union Local 150*, 908 F.2d 474, 477 n.5 (9th Cir. 1990). But *Heck* dismissals are usually *without prejudice*. *See Heck*, 512 U.S. at 479 (noting that the district court dismissed the claims without prejudice); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.

7

1995) (*Heck* dismissals "must be without prejudice so that [plaintiff] may reassert his claims if he ever succeeds in invalidating his conviction"); *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 787 (6th Cir. 2015) ("When courts dismiss claims under *Heck*, they typically do so *without prejudice* . . . ."). Dismissals *without prejudice* are not "judgment[s] on the merits" for res judicata purposes. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001). The Court's April 2018 Order in *Zuegel I* stated that the *Heck*-barred claims were dismissed without leave to amend. Apr. '18 Ord. at 11, 16. The Order did not state that the claims were dismissed with prejudice. Although it may have been unclear from the Court's Order, given the clear statement regarding dismissal of *Heck* claims in *Trimble*, the dismissals should be without prejudice to reasserting the claims if the *Heck* bar is lifted. Because the dismissals were without prejudice, they were not "judgment[s] on the merits" such that res judicata would apply.

Res judicata accordingly does not categorically bar Zuegel's claims here.

### C. The § 1983 Claims Remain *Heck*-Barred, Notwithstanding the Alleged Unavailability of Federal Habeas Relief

The parties' main dispute involves whether the *Heck* bar that was the basis for the Court's dismissal of most of Zuegel's § 1983 claims in *Zuegel I* remains a bar to asserting those claims today. The Court finds that the *Heck* bar remains.

Zuegel's argument goes like this. For purposes of this case, Zuegel does not contest the grounds on which the Court found that the § 1983 claims asserted in *Zuegel I* were barred at that time or that the claims needed to be pursued through habeas proceedings. Zuegel, however, asserts that circumstances have changed since the Court's dismissal of those claims. Zuegel says he did pursue his claims through state habeas proceedings, which needed to be exhausted prior to asserting a federal habeas claim. He exhausted those remedies when the California Supreme Court denied his petition on July 10, 2019. But Zuegel says that he had no meaningful opportunity to pursue federal habeas relief because his probation ended less than three months later on September 30, 2019, supposedly mooting any federal habeas claims under the Supreme Court's decision in *Spencer v. Kemna*, 523 U.S. 1 (1998). Zuegel says that under *Spencer* and its progeny in the Ninth Circuit, because his federal habeas claims became moot at the moment his

8

probation expired and he had no meaningful opportunity to assert them, he can now assert those claims as § 1983 claims in this direct proceeding. *See* Compl. ¶¶ 1–2; Opp. at 4–9.

Defendants maintain that the claims are still *Heck*-barred. MTD at 6–9; Reply at 3–4. They say that Zuegel waived any argument based on *Spencer* because he did not raise it immediately upon expiration of his probation, which occurred prior to the final judgment in *Zuegel I*. MTD at 9; Reply at 4. They also contend that the holding in *Spencer* is narrow and inapplicable to claims directly challenging the validity of an underlying conviction or plea, and that in any case Zuegel was not sufficiently diligent in prosecuting his habeas claims to invoke this rule. MTD at 6–8.

As an initial matter, Zuegel is incorrect that his federal habeas claims were mooted by the expiration of his probation. When a habeas petition challenges a conviction, there is a presumption of collateral consequences that renders the habeas petition not moot even after the period of punishment expires. *See Spencer*, 523 U.S. at 12. The Supreme Court has said that it is an "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences" even after punishment ends, such as "deprivation of the right to vote, to hold office, to serve on a jury, or to engage in certain businesses." *Id.* at 8, 12 (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)). Zuegel had a presumption of collateral consequences from his guilty plea to and conviction of the state misdemeanor charge such that his habeas claims were not mooted when his probation expired.

But even if Zuegel is correct that his federal habeas claims were mooted by the expiration of his probation, his proper remedy was to seek reconsideration under Civil Local Rule 7-9 in *Zuegel I*. After all, he was aware of those facts a full 14 months before trial and he was no stranger to late amendments to his complaint. Zuegel amended his complaint on June 29, 2020 to add the only claim that proved successful at trial. *See Zuegel I*, Third Amended Complaint, ECF No. 87. Furthermore, he failed to raise this issue in post-judgment motions. Thus, there is a serious possibility that Zuegel waived this argument in *Zuegel I* such that issue preclusion applies in this case. *See Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (under issue preclusion, losing party in prior case cannot avoid preclusion by "finding some argument it failed to raise in

9

the previous litigation").

And, even if Zuegel's habeas claim is not moot and he is not precluded from making this argument in this new case, the Court concludes that the *Spencer* exception is not available to Zuegel and that his dismissed § 1983 claims remain *Heck*-barred because he was not diligent in pursuing this claim. To see why, the Court discusses *Spencer*, two important Ninth Circuit precedents interpreting *Spencer*, and the two lines of district court cases applying the Ninth Circuit's cases.

In *Spencer*, the Supreme Court held that the expiration of a petitioner's sentence moots a petitioner's federal habeas petition under Article III due to a lack of a case or controversy where there are no collateral consequences from the underlying action that is challenged. Randy Spencer was serving a three-year sentence for felony stealing and burglary that began in October 1990. *Id.* at 3. After he was released on parole in April 1992, he committed a parole violation and was returned to prison after his parole was revoked in September 1992. *Id.* at 3–5. Upon returning to prison, Spencer immediately began efforts to invalidate the revocation of his parole (not the underlying conviction). *Id.* at 5. His efforts at obtaining state court relief were unsuccessful at all levels of the Missouri courts, and he then filed a petition for a writ of habeas corpus with the United States District Court for the Western District of Missouri in April 1993. *Id.* After several extensions were granted by the court and six months passed, Spencer requested in July 1993 that the court expeditiously rule on his motion "to prevent his claim from becoming moot" due to the upcoming expiration of his term of imprisonment. *Id.* at 6. Spencer's imprisonment expired on October 16, 1993 without a ruling from the district court. *Id.* The district court dismissed his habeas petition as moot almost two years later on August 23, 1995. *Id.* With Justice Scalia writing for the Court, the Supreme Court affirmed the district court's dismissal of the habeas petition, finding that there was lack of an Article III case or controversy because the petitioner's sentence had ended and there was no evidence he was suffering from (or was entitled to any presumption of) collateral consequences from his parole revocation. One of the arguments Spencer made was that dismissal of his habeas petition would prevent him from pursuing § 1983 claims at all because they would be *Heck*-barred. *Id.* at 17. Justice Scalia called this "a great non

sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available." *Id.* Justice Scalia said that Spencer retained the ability to bring damages claims for procedures that did not necessarily imply the invalidity of his parole revocation because *Heck* would not apply to those claims. *Id.*

As the Ninth Circuit has recognized, however, to the extent that statement "means that a § 1983 action is precluded even though a habeas petition would be dismissed as moot, five Justices disagreed with it." *Nonnette v. Small*, 316 F.3d 872, 876 (9th Cir. 2002). It is instead Justice Souter's concurring opinion for four Justices in *Spencer* that controls on this point. Justice Souter wrote:

> *Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim, and for reasons explained in my *Heck* concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any result. For all that appears here, then, Spencer is free to bring a § 1983 action, and his corresponding argument for continuing habeas standing falls accordingly.

*Spencer*, 523 U.S. at 19 (Souter, J., concurring). Justice Stevens—the lone dissenter—agreed on this point, making it the position of five Justices. *See id.* at 25 n.8 (Stevens, J., dissenting) ("Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice SOUTER explains, that he may bring an action under 42 U.S.C. § 1983.").

The Ninth Circuit applied the rule from *Spencer* in *Nonnette*. In that case, plaintiff Narvis Nonnette brought a § 1983 action challenging the miscalculation of his prison sentence, revocation of 360 days of good-time credits, and imposition of 100 days of administrative segregation in a disciplinary proceeding after Nonnette was involved in an inmate fight. 316 F.3d at 874. The district court found those claims *Heck*-barred because they challenged the validity of intact decisions the caused Nonnette's continued confinement. *Id.* The Ninth Circuit reversed. Although at the time the district court made its decision Nonnette was still incarcerated, he was released during the pendency of the appeal. *Id.* at 877. Because Nonnette was no longer incarcerated, the Ninth Circuit concluded based on Justice Souter's concurring opinion that *Heck* did not preclude Nonnette's § 1983 action. *Id.* In a footnote later in the opinion, the Ninth Circuit noted:

11

> We do not share the State's concern that our holding will encourage prisoners to delay their challenges to loss of good-time credits until their release is imminent or accomplished. The possibility of release from incarceration is the strongest incentive for prisoners to act promptly to challenge such administrative action by habeas corpus after administrative remedies are exhausted. We also emphasize our holding affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters; the status of prisoners challenging their underlying convictions or sentences does not change upon release, because they continue to be able to petition for a writ of habeas corpus.

*Id.* at 878 n.7 (citing *Spencer*, 523 U.S. at 7–12).

The Ninth Circuit further clarified the scope of this rule in *Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006). In that case, the plaintiff former state prisoner brought § 1983 claims alleging wrongful arrest, malicious conspiracy, conspiracy to bring false charges, and excessive force related to two separate arrests in 1995 and 1997. *Id.* at 702. Guerrero left custody in 1999 and filed his § 1983 suit a year later. *Id.* The Ninth Circuit found that *Heck* barred most of Guerrero's § 1983 claims. The court noted that although habeas corpus was not available to Guerrero because he was no longer in custody and "exceptions to *Heck*'s bar for plaintiffs no longer in custody may exist" based on *Spencer* and *Nonnette*, the exceptions did not apply because Guerrero did not diligently seek relief through habeas procedures prior to filing his § 1983 lawsuit. *Id.* at 704–05. Guerrero in fact never did so. *Id.* "*Nonnette* was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual immediately pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his prison sentence." *Id.* at 705. The court also pointed to the footnote in *Nonnette*, saying that it "emphasized that *Nonnette*'s relief from *Heck* 'affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters,' not challenges to an underlying conviction such as those Guerrero brought." *Id.* (quoting *Nonnette*, 316 F.3d at 878 n.7).

Based on these cases, the Court finds that the *Spencer* exception does not apply to Zuegel here. Under *Nonnette* and *Guerrero*, it is not even clear that Zuegel can use the *Spencer* exception because his claim was not moot upon conclusion of probation, as it might have been were he challenging "loss of good-time credits, revocation of parole or similar matters." *Nonnette*, 316

F.3d at 878 n.7. As the Court previously stated, when a habeas petition challenges a conviction, there is a presumption of collateral consequences that renders the habeas petition not moot even after the period of punishment expires. *See Spencer*, 523 U.S. at 12. The discussion of the presumption of collateral consequences in Justice Scalia's majority opinion in *Spencer* is not affected by Justice Souter's concurrence in that case, which only represented a majority as to the *Heck* issue. To be sure, some judges in this Circuit have rejected a strict interpretation of the footnote in *Nonnette* that would restrict availability of the *Spencer* exception to those delineated matters. These courts hold that the footnote was merely "distinguishing claims that ex-prisoners can continue to assert on habeas once they are released [from custody] from claims that a prisoner's release renders moot." *Beckway v. DeShong*, 717 F. Supp. 2d 908, 917 (N.D. Cal. 2010) (allowing plaintiff who pleaded no contest to proceed with § 1983 claims under *Spencer* exception because he was "never incarcerated" and so "habeas is unavailable to him"); *Cole v. Doe 1 Thru 2 Officers of the City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1092–93 & n.2 (N.D. Cal. 2005) (rejecting narrow interpretation of the footnote because "the Ninth Circuit's focus in *Nonnette* was on the availability of the habeas remedy," not on the form of the underlying claims). Other courts in this Circuit have strictly interpreted the footnote and concluded that *Nonnette* and *Guerrero* do not allow the types of claims asserted by Zuegel here. *See Rouse v. Conner*, 2012 WL 2368464, at *10 (N.D. Cal. Jun. 21, 2012) (*Nonnette* "provide[s] relief from *Heck* only for 'former prisoners challenging loss of good-time credits, revocation of parole[] or similar matters,' . . . not challenges to an underlying conviction"); *Wesbecher v. Landaker*, 2008 WL 2682614, at *4 (E.D. Cal. Jul. 1, 2008) (interpreting exception as "narrow" based on *Nonnette* footnote) (citing *El v. Crain*, 560 F. Supp. 2d 932, 945 (C.D. Cal. Jun. 4, 2008)). Zuegel is not challenging the "loss of good-time credits, revocation of parole or similar matters" like the plaintiff in *Nonnette*; instead, he is "collaterally challenging an underlying conviction" as was the plaintiff in *Guerrero*.[4]

---

[4] Like in *Zuegel I*, Zuegel does not contend that a no contest plea is treated any differently for *Heck* purposes than a conviction. *See* Apr. '18 Ord. at 7 n.5.

13

1     But the Court need not decide whether *Nonnette* and *Guerrero* allow the type of claims
2  Zuegel asserts here because even if they did, the Court finds that Zuegel did not diligently pursue
3  "expeditious litigation" to challenge the conduct underlying his plea. *Guerrero*, 442 F.3d at 704–
4  05. Here, Zuegel pled no contest to the misdemeanor charge on September 30, 2016. He filed no
5  direct appeal in state court and he waited fifteen months until December 19, 2017 to initiate his
6  state habeas proceedings. *Compare Zuegel I*, ECF No. 19-4 (plea), *with* RJN Ex. H at 67
7  (Superior Court habeas petition). This fifteen-month wait to begin pursuit of habeas claims does
8  not represent diligent pursuit of "expeditious litigation" to challenge the conduct underlying his
9  plea. Zuegel defends his diligence, saying that (1) his petition was filed two months after he
10 located counsel and filed his amended complaint in *Zuegel I*, and (2) that the length of the state
11 court proceedings foreclosed filing for federal habeas relief. Opp. at 8–9. While the Court does
12 not fault Zuegel for the length of deliberations by the state courts, diligence is not measured from
13 the date counsel is retained and Zuegel offers no impediment to hiring a lawyer over the preceding
14 thirteen months. Zuegel cites no case that permitted a plaintiff to initiate claims pursuant to the
15 exception articulated in *Spencer* after over a year's delay of the plaintiff's own making. The Court
16 finds that this long delay in beginning his pursuit of state habeas relief amounts to a lack of
17 diligence that precludes availability of the *Spencer* exception to Zuegel, even if (as the Court
18 doubts) he would otherwise qualify for it.
19    Additionally, although not directly at issue, Zuegel's federal habeas petition may have
20 already been outside of the 1-year limitations period under the Antiterrorism and Effective Death
21 Penalty Act of 1996 ("AEDPA") after the conclusion of his state habeas proceedings. AEDPA
22 provides that a 1-year limitations period begins running from "the date on which the judgment
23 became final by the conclusion of direct review or the expiration of time for seeking such review."
24 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 148–54 (2012). Zuegel's
25 conviction occurred on September 30, 2016, so his time to initiate a direct review in state court
26 ended on October 30, 2016. Cal. Rule of Court 8.853. His time to file a federal habeas petition
27 thus appears to have expired one year later on October 30, 2017, before he filed his state habeas
28

14

petition on December 19, 2017.[5] Recognizing that the statute of limitations is an affirmative defense, *Day v. McDonough*, 547 U.S. 198, 205 (2006), the Court finds this issue relevant only as further context for the diligence inquiry.

The Court thus finds that the claims remain *Heck*-barred because Zuegel was not diligent in pursuing other avenues of review. Because the Court concludes that the *Heck* bar has not been lifted by the alleged unavailability of a federal habeas remedy, no claims accrued on September 30, 2019 such that the two-year statute of limitations applicable to the claims started to run on that date. *See* MTD at 9; Opp. at 9–10.

\* \* \*

Because the claims remain *Heck*-barred, leave to amend would be futile. Defendants' motion to dismiss will thus be GRANTED WITHOUT LEAVE TO AMEND, but WITHOUT PREJUDICE to reasserting the claims if Zuegel satisfies the favorable termination requirement of *Heck*. 512 U.S. at 486–87.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the Mountain View Defendants motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND because the *Heck* bar remains in effect, but WITHOUT PREJUDICE to Zuegel reasserting the claims if he satisfies the favorable termination requirement of *Heck*. The Clerk shall close the case.

Dated: July 20, 2022

BETH LABSON FREEMAN
United States District Judge

---

[5] Because his state habeas action was filed after the 1-year AEDPA limitations period appears to have already run, his state habeas proceedings did not toll that limitations period. *See* 28 U.S.C. § 2244(d)(2).

15